KORF *v.* KORF.

MORTGAGES—FORECLOSURE—WITNESSES—FALSE TESTIMONY.
> Where, in a suit to foreclose a mortgage, the court finds that the complainant and her husband have testified falsely in regard to a note against a third person, turned over to the husband in part payment of the mortgage debt, their general denials as to the husband's authority to act for the wife in accepting the note should be given little weight.

Appeal from Alcona; Simpson, J. Submitted October 12, 1900. Decided November 13, 1900.

Bill by Sarah Korf against Della Korf and John Korf to foreclose a mortgage. From a decree for complainant, defendants appeal. Modified.

*Charles R. Henry,* for complainant.

*Fails & Kelley,* for defendants.

MONTGOMERY, C. J. This is a bill of foreclosure. The defendants, in October, 1895, purchased of complainant's husband, Fred Korf, the premises covered by the mortgage in suit for the agreed price of $1,400, of which $1,000 was paid in cash, and the balance evidenced by a note of $400, payable to Fred Korf. Some time later this note was taken up, and a new note made payable to complainant for a like amount. On the 13th of February, 1897, the note in suit was given, which is also payable to complainant, and is for the principal sum of $475. It was given for this amount to secure an additional indebtedness of $75, as to which there is no dispute, and at this date a mortgage was given upon the land. The defense set up is that at a later date the defendant John Korf turned over to Fred Korf, for complainant, a note of $450, made by F. A. Stewart and G. A. Stewart, of Lidgerwood, N.

D., in payment of the note and mortgage in suit, and that the complainant has actually received the money on the Stewart note. The complainant and her husband testify that Fred Korf purchased the Stewart note, and paid for the same $400 in cash. The circuit judge did not find this claim to be true, saying at the close of the testimony:

"It does not seem to me, from the evidence in this case, that I should find that Fred Korf paid John Korf anything for this Western note, so called,—the Stewart note. It does not seem to me to be reasonable; and yet, on the other hand, it does not seem reasonable that he would take this note, and agree that it should be in full payment of the note and mortgage which it secured. So there are those two things which do not seem reasonable, and I am in doubt as to these points, and I will say that I am unable to determine, from the testimony in this case, whether Fred Korf paid anything for this note and bought it. I am unable to say, from the testimony in this case, whether Fred Korf agreed to take this note, and exchange the mortgage for it; that is, take it in payment of the mort gage. The evidence is conflicting and contradictory, and I am unable to determine these facts. But I do not deem it necessary, and consequently I do not find upon that point, other than to say that I am unable to decide just how that was from the testimony. I think there is a lack of proof of sufficient agency or of any agency that would bind the complainant by the acts of her husband."

A careful reading of the testimony has convinced us that the claim of complainant and her husband that Fred Korf bought and paid cash for the Stewart note is untrue. The circumstances of the case, as well as the positive testimony of the defendants, contradict it. Fred Korf and John Korf are brothers. There is no suggestion in the record that John Korf had any use for the $400 cash at this time, unless it should be applied on the note in suit; and it is to us inconceivable that Fred Korf should, in the absence of any apparent necessity, and without any suggestion of any need on the part of his brother, advance $400 on the note of a stranger, while his wife already held the defendant's obligation for $475. We are also convinced that the complainant's husband was authorized to

act for her.    It is true the direct proof of his authority is meager, but not wholly wanting, and, as we feel justified in applying to the testimony of complainant and her husband the maxim, "*Falsus in uno, falsus in omnibus,*" we are not disposed to attach any considerable weight to the general denial of authority.    The consideration for this mortgage was originally furnished by the husband. He negotiated for the mortgage with the knowledge of complainant.    Mrs. Della Korf testified that on one occasion complainant said to her that her husband attended to all her business.    We are satisfied that he did assume control of the business with the knowledge of complainant. The Stewart note should be applied in payment of the complainant's mortgage *pro tanto*.

A decree will be entered in favor of complainant for $16. Defendants will recover costs of both courts.

The other Justices concurred.